

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHARLES V. CALDER, et al., on Behalf of Themselves and on Behalf of all Others Similarly Situated, )<br>)<br>)<br>) | |
| Plaintiffs, ) | No. 06 C 1083 |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| AT&T PENSION BENEFIT PLAN and AT&T INC., )<br>) | |
| ) | |
| Defendants. ) | |

### ORDER

Plaintiffs Charles V. Calder ("Calder"), Leslie J. Vaughn-Smith ("Vaughn-Smith"), and David R. Koenig ("Koenig") have brought this action on behalf of themselves and others similarly situated against the AT&T Pension Benefits Plan ("the Plan") and AT&T. The suit alleges that the defendants violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by amending the pension plan without providing proper notice. Defendants have moved to dismiss the action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue or in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Texas. For the reasons set forth below, the motion to dismiss is denied and the motion to transfer is granted.

### BACKGROUND

Plaintiffs are current and former employees of various AT&T corporations and participants in the AT&T Pension Benefits Plan. At the center of the litigation is a series of amendments to the Plan made between 1997 and 2000. The amendments modified the

method according to which participants' pension compensation was determined. Prior to the amendments, a participant's pension was determined by the rate at which he or she was paid. Under the amended plan, compensation is calculated according to participants' "actual base pay," i.e., the amount of pay participants actually earned. Plaintiffs allege that the amendments significantly reduced their benefits. The complaint claims that the amendments were not effective as to the proposed class members because they were not given proper notice. Specifically, plaintiffs cite ERISA § 204(h), which provides:

> A plan . . . may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to . . . each participant in the plan.

29 U.S.C. § 1054(h)(1)(A).[1]

Count I of the complaint, brought pursuant to ERISA § 502(a)(3), seeks to invalidate the actual base pay amendments as a result of the defendants' failure to provide adequate notice. Count II, brought under ERISA § 502(a)(1)(B), seeks recalculation of the plaintiffs' pension benefits in accordance with the terms of the unamended Plan.

After the filing of the complaint, defendants filed a motion to dismiss for improper venue pursuant to Rule 12(b)(3) or to transfer pursuant to 28 U.S.C. § 1404(a). The motion also sought dismissal pursuant to Rule 12(b)(6) on the grounds that Count I was barred by the statute of limitations and Count II was barred for failure to exhaust administrative remedies. Plaintiffs subsequently filed an amended complaint, which

---

[1] This version of section 204(h) was in effect during the period of the events in question. Although the provision has since been amended several times, only the version quoted above is relevant for the purposes of this motion.

added Koenig as a third named plaintiff.[2] Defendants have again moved to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(3) or to transfer pursuant to section 1404(a).[3]

## DISCUSSION

### I. Motion to Dismiss for Improper Venue

#### A. Legal Standard

On a Rule 12(b)(3) motion to dismiss for improper venue, the plaintiff bears the burden of establishing that the venue he or she has chosen is proper. *Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). In ruling on a motion to dismiss under Rule 12(b)(3), the court follows the same standard as that for dismissal pursuant to Rule 12(b)(2). *Id.* (citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987)). The court takes all allegations in the complaint as true unless contradicted by the defendant's affidavits. *Id.* The court may examine facts outside the complaint, and the court must resolve all factual conflicts and must draw all reasonable inferences in favor of the plaintiff. *Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).

While venue is generally governed by 28 U.S.C. § 1391, cases brought under ERISA are controlled by a special venue provision embodied in 29 U.S.C. § 1132(e)(2).

---

[2] In an affidavit submitted as an exhibit to plaintiffs' response brief, Koenig states that he worked for SBC in Hoffman Estates, Illinois and resided in this district from 2000 to 2001. Pls.' Mem. Opp. Defs.' Mot. Dismiss Transfer, Ex. A ¶¶ 6-8. After retiring in 2001 and receiving his benefits under the Plan, he moved out of state. *Id.* ¶ 9. According to an affidavit submitted by defendants, Koenig relocated to Texas. *See* Defs.' Reply Pls.' Opp. Mot. Dismiss Transfer, Aff. of Hannah Patterson, Ex. A ¶ 2. Koenig further states that he has became employed once again, and that his employer is located in this district. His current position has required him to return to this district on a regular basis. *Id.* He has since been promoted to a position requiring him to take up permanent residence in this district once again. *Id.* ¶¶ 3, 9. At the time his affidavit was filed— July 12, 2006—Koenig stated that he would relocate in this district within sixty days. *Id.* ¶ 4.

[3] Defendants have not renewed their Rule 12(b)(6) motion to dismiss on timeliness grounds. Defendants briefly reassert their argument that Count II is barred for failure to exhaust administrative remedies. The court addresses that contention, *infra*, at note 4.

3

*Bon Secours Health Sys., Inc. v. Coultthurst*, No. 04 C 5142, 2005 WL 1528267, at *2

(N.D. Ill. June 28, 2005). That provision states:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

ERISA's venue provision reflects Congress's intent to allow pension funds to collect debts as efficiently as possible. *Cent. States, Southeast & Southwest Areas Pension Fund v. KAW Transp. Corp.*, No. 96 C 7935, 1997 WL 135680, at *4 (N.D. Ill. Mar. 21, 1997). "Congress intended to expand, rather than restrict, the ERISA plaintiff's choice of forum." *Id.* Accordingly, ERISA's venue provision is to be interpreted liberally. *See Tr. Hotel Employees & Rest. Employees Intern. Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1182 (N.D. Ill. 1990); *see also Ingalls Mem'l Hosp. v. Northeastern Ctr., Inc. Employee Benefits Plan*, No. 90 C 3283, 1991 WL 24505, at *2 (N.D. Ill. Feb. 20, 1991) (in enacting ERISA's venue provision, Congress intended to "strike a balance in favor of liberal venue").

The first of section 1132(e)(2)'s bases for venue—where the plan is administered—is not helpful for plaintiffs, for the plan at issue here is administered in San Antonio, Texas. However, plaintiffs contend that venue is proper under the section's three remaining grounds: (1) where the breach took place; (2) where a defendant resides; and (3) where a defendant "may be found." Because the provision's various bases for venue are stated disjunctively, plaintiffs need show only that one of the grounds applies. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 773-74 (N.D. Ill. 1998).

4

### B.    Place of the Alleged Breach

The court first considers whether venue is proper in this district based on the place of the defendants' alleged breach.  The parties disagree sharply over the nature of the alleged breach and over where the breach took place.  Plaintiffs argue that the breach stems from the defendants' failure to pay the benefits due to plan participants.  In such cases, plaintiffs argue, the place of the breach is deemed to occur where the benefits were to be received.  Since many of the class members reside in this district and received (or were supposed to receive) their benefits here, plaintiffs claim that venue is proper in this district.

Against this, defendants argue that the relevant breach for the purposes of this motion is the defendants' alleged failure to provide adequate notice of the amendments, not their alleged failure to provide benefits.  According to defendants, plaintiffs' claim for benefits is parasitic upon the claim for inadequate notice, since if plaintiffs fail to prevail on the latter claim, they cannot proceed with the former.  Defendants further argue that where the breach involves a failure to provide notice, the locus of the breach is the place from which the notice was issued, not the place at which the notice was received.  In this case, the notice was issued from San Antonio, Texas, not from within this district.  As a result, defendants claim that the relevant breach occurred in the Western District of Texas, not in this district.[4]

---

[4] Defendants additionally argue that plaintiffs' claim for benefits cannot be brought in this suit because plaintiffs have failed to exhaust administrative remedies.  However, this argument is relegated to a footnote in defendants' reply brief.  Defs.' Reply Br. 2 n.1.  As a result, the argument is not only insufficiently developed but also presented in such a way that the plaintiffs have had no opportunity to respond to it.  As a result, the argument is deemed waived.  *See, e.g., Porco v. Tr. of Indiana Univ.*, 453 F.3d 390, 395 (7th Cir. 2006) (arguments raised for the first time in reply brief are waived); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Defendants' argument is unconvincing. As an initial matter, the court is unpersuaded by defendants' contention that only breach of the duty to provide notice should be considered for the purposes of this motion. Defendants do not provide any legal authority to support their contention that the claim for benefits is derivative vis a vis the claim for notice; and the argument is presented only cursorily in their reply brief. Nor does the court find the contention persuasive as a matter of logic, policy, or common sense. Accordingly, the court sees no reason to ignore plaintiffs' claim for benefits in determining the place of the alleged breach. Where a claim for benefits is concerned, courts have frequently held that the place of the breach is where the benefits were to be received. *See Stickland v. Trion Group, Inc.*, 463 F. Supp. 2d 921, 925 (E.D. Wis. 2006); *Cole v. Cent. States Southeast and Southwest Areas Health & Welfare Fund*, 225 F. Supp. 2d 96, 98 (D. Mass. 2002); *Stumpf v. Med. Benefits Adm'rs*, No. 8:99CV185, 2001 WL 1397326, at *2 (D. Neb. Mar. 14, 2001). Since many class members residing in this district are alleged to have received inadequate benefits as a result of the amendments to the Plan, the court concludes that the breach of the duty to provide the participants with proper benefits may be deemed to have occurred in this district.

Even if the court were to accept defendants' contention that the relevant breach in this case is defendants' failure to provide notice, it would not follow that venue is improper in this district. Despite defendants' insistence that breaches of the duty to provide notice are deemed to occur at the place from which the notice was to be provided, courts in point of fact are divided on this question. *See Schoemann v. Excellus Health Plan*, 447 F. Supp. 2d 1000, 1002 (D. Minn. 2006) (collecting cases).

6

Indeed, this question was recently confronted in *Stickland*. There, the court concluded, *pace* defendants' contention here, that breaches of the duty to provide notice take place where the notice is to be received, which is generally where the participant or beneficiary resides. 463 F. Supp. 2d. at 925. The *Stickland* Court's decision was based on three reasons. First, the court noted that deeming the breach to have taken place where the notice was to have been received is "consistent with Congress's intent that provisions relating to venue in ERISA cases be construed in favor of plan participants and beneficiaries." *Id.* (citing *Varsic v. U.S. Dist. Ct. C.D. Cal.*, 607 F.2d 245, 247-48 (9th Cir. 1979)). In addition, the court noted that interpreting the expression "where the breach took place" to mean "the place that a defendant failed to provide notice or decided to deny benefits" would make the clause mere surplussage, since decisions to provide notice will virtually always be made where the plan is administered and section 1132(c)(2)'s first clause already makes venue proper where the plan is administered. *Id.* (citing *Cole*, 225 F. Supp. 2d at 98). Third, and finally, the court noted that "a claim that a defendant breached the terms of a plan is essentially a breach of contract claim, and a breach of contract occurs where the contract is to be performed." *Id.* (citing *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan*, 517 F. Supp. 627, 634-37 (S.D. W.Va. 1981)).

The court finds the reasoning of *Stickland* to be persuasive. Thus, to the extent that the only relevant breach here is defendants' alleged failure to provide plaintiffs with notice of the amendments to the plan, the court concludes, in light of the many plan

participants residing in this district, that the breach can be deemed to have occurred in this district.[5]

In sum, the court concludes that the breach may be deemed to have occurred in this district and that venue in this district is therefore proper. Nevertheless, because the issue may be considered a close one, the court considers additional arguments on the basis of which plaintiffs claim that venue is proper in this district.

## C.    Where Defendants "May Be Found"

In addition to providing for venue at the place of the alleged breach, section 1132(e)(2) also makes venue proper where a defendant "may be found." The Seventh Circuit has followed other circuits in holding that "for purposes of venue under the ERISA statute a defendant 'may be found' in a district with which it has minimum contacts as that term has been employed in *International Shoe* and its progeny." *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 811 (7th Cir. 2002) (citation omitted). In other

---

[5] Defendants also briefly argue that venue is improper here because none of the named plaintiffs lived in the district during the period within which the allegedly inadequate notices were sent. Defendants therefore conclude that, as to the named plaintiffs, this district has no connection to the dispute. This argument fails for at least three reasons. First, like defendants' argument with respect to plaintiffs' alleged failure to exhaust administrative remedies, the argument concerning the named plaintiffs' residence is presented so briefly as to be deemed waived. For example, defendants cite no authority in their opening brief for the proposition that only the named plaintiffs' connections with the dispute are relevant for the purpose of determining venue. Moreover, defendants' claim is factually uncertain. While it is true that neither Calder nor Vaughn-Smith ever resided in this district, Koenig is alleged to have lived in the district from 2000 to 2001. Since the period covering the allegedly defective notice ranges from 1997 to 2000, and since Koenig lived in the district for at least some portion of 2000, it is possible that Koenig lived in the district during the relevant period of inadequate notice. In light of the fact that all factual conflicts and all reasonable inferences must be resolved in plaintiffs' favor, *Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006), the court cannot accept at face value defendants' contention that Koenig was unaffected by the allegedly inadequate notice. In any event, defendants' argument with respect to plaintiffs' residence in this district has purchase only insofar as plaintiffs' argument for improper notice is concerned. It is undisputed, for example, that Koenig lived in this district at the time he received his plan benefits. Insofar as plaintiffs' claim for benefits is concerned, therefore, it cannot be contended that the district has no connection with the dispute.

words, in order to determine whether venue is proper in this district, the court must consider whether defendants' contacts with this district are such as would allow the court to exercise personal jurisdiction over them. *Id.* Personal jurisdiction may be either general or specific. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) Hence, venue is proper if the plaintiffs can show that the requirements are met for either form of personal jurisdiction. Moreover, section 1132(e)(2) makes clear that venue is proper wherever *a* defendant may be found. Thus, plaintiffs need not show that both defendants would be subject to personal jurisdiction in this district; rather, venue may be laid here so long as either of the defendants' contacts with the district would be sufficient to support the court's exercise of personal jurisdiction. *See, e.g., Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 854 (D. Md. 2005); *Bowe Bell + Howell Co. v. Immco Employees' Ass'n*, No. 03 C 8010, 2004 WL 1244143, at *5 (N.D. Ill. June 2, 2004); *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 95 (E.D. Mich. 1991). As explained below, the court concludes that the requirements of both general and specific personal jurisdiction are met by the Plan. As a result, the court need not consider whether the requirements are also met by AT&T.

### 1. General Personal Jurisdiction

The court first considers whether the Plan's contacts with this district would be sufficient to subject it to general personal jurisdiction in this forum. "When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Cent. States, Southeast & Southwest Areas Pension Fund v. Phencorp*

9

*Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir. 2006) (internal quotation marks omitted). Plaintiffs argue that general personal jurisdiction may be asserted over the Plan for two reasons. First, they note that many thousands of Plan participants earn benefits and receive Plan benefits in this District. This alone, they claim, constitutes the type of continuous and systematic general business contacts that provide a basis for general personal jurisdiction in this forum. Additionally, plaintiffs argue that the Plan's actuarial work is performed in this district and that the Plan regularly communicates with Plan participants in this district (via the Internet, mail, and telephone) about their benefits, distribution options, and other matters of a general nature.

Defendants offer a two-pronged rejoinder. First, they attempt to distinguish the cases on which plaintiffs rely. Second, defendants cite cases purporting to show that the mere presence of plan participants in a district is not sufficient to confer general personal jurisdiction. Both of these counterarguments fail.

As an initial matter, contrary to defendants' insistence, courts have found the requirements for general jurisdiction to have been met in cases very similar to this one. In *Moore v. St. Paul Companies, Inc.*, Civ. A. No. 94-1329, 1995 WL 11187 (D. N.J. Jan. 3, 1995), for example, the plaintiff brought an ERISA suit in New Jersey against, *inter alia*, a plan and its administrator, both of which were located in Minnesota. *Id.* at *1. The defendants moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3). *Id.* The court considered whether the defendants "could be found" in New Jersey and therefore analyzed whether the defendants' contacts with the forum state were sufficient to confer general personal jurisdiction. *Id.* at *4. The contacts included the fact that over four hundred New Jersey

10

employees were enrolled in the plan; the plan received contributions from employees in New Jersey, and the plan made payments to employees in New Jersey. *Id.* In addition, the defendants corresponded with the plaintiffs and other New Jersey employees regarding their benefits under the plan. *Id.* The court concluded that the "contacts were purposeful, continuous and systematic," were "sufficient to put St. Paul and the Plan on notice that they might be sued here," and were sufficient to give the court both general and specific personal jurisdiction over the plan. *Id.*

The contacts at issue in *Moore* are largely the same as those alleged here. Like the court in *Moore*, the court here holds that, based on the continuous and systematic nature of the contacts with this forum, the Plan was on notice that it might be haled into court here and that the Plan could therefore be subjected to general personal jurisdiction in this district.

The cases relied upon by defendants in opposing plaintiffs' position are inapposite. Defendants cite three cases for the proposition that the mere presence of plan participants in a district is insufficient to support the conclusion that the defendant "may be found" in that district. As an initial matter, these cases fall short because plaintiffs do not argue that general personal jurisdiction exists solely by virtue of the fact that Plan participants are present in this district. As noted, plaintiffs also point to a host of other contacts, including the defendants' actuarial work and their regular communication with participants in the district.

Moreover, all of the cases cited by the defendants are easily distinguishable. Defendants rely heavily on *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804 (7th Cir. 2002). There, two Delta Airline pilots brought an ERISA suit against their retirement

11

plan in the Southern District of Illinois. *Id.* at 805. The plan moved to dismiss for improper venue, noting that of 2,740 retired pilots, only two lived in the Southern District of Illinois. *Id.* at 810. Moreover, neither of the two residents were plaintiffs in the suit. *Id.* The court concluded that the "the residence of only two Plan participants in the Southern District of Illinois, without more, does not constitute sufficient contact between that district and the Plan for the court to determine that the Plan may be 'found' there for purposes of § 1132(e)(2)." *Id.* at 811. Here, however, unlike in *Waeltz*, thousands of Plan participants are alleged to reside in this district.

Next, defendants cite *Varsic v. United States District Court for Central District of California*, 607 F.2d 245 (9th Cir. 1979). The plaintiff in *Varsic* brought a putative class action under ERISA against his retirement plan in the Central District of California. *Id.* at 247. The district court denied the plan's motion to dismiss for improper venue but granted the plan's motion to transfer the case to the Southern District of New York. The district court's decision was based on the notion that ERISA's venue provision did not allow venue to be laid in the district simply because an employee performs his work and earns his pension credits in that district. *Id.* On appeal, the Ninth Circuit found that the plan was indeed subject to personal jurisdiction in the district and that venue there was proper. The plan conceded that it received contributions from employers on behalf of employees working in the district and that it had provided benefits to some beneficiaries who lived in the district. *Id.* at 249. In addition, the plan acknowledged that its activities gave rise to fiduciary responsibilities to the plaintiff and to other workers on behalf of whom it had accepted contributions. *Id.* Moreover, the plan had participated with a

union in the forum and had received contributions from the forum. These contacts, the Ninth Circuit held, sufficed to confer personal jurisdiction over the plan.

Defendants' reliance upon *Varsic* is puzzling: contrary to their contention, *Varsic* never considered the question whether the mere presence of plan participants is sufficient to establish general personal jurisdiction. Indeed—as defendants themselves elsewhere point out, Defs.' Reply Br. 6—*Varsic* discussed only whether the plan there was subject to *specific* personal jurisdiction. *Varsic*, 607 F.2d at 249 (noting that the action "directly involve[d] the Fund's activities in California" and that, as a result, it was unnecessary to "decide whether the Fund's contacts with California are 'continuous and systematic' or 'substantial' enough to afford jurisdiction over an action unrelated to the Fund's forum activities"). Defendants might be understood as arguing that general personal jurisdiction cannot be found here because the Plan's contacts with this district are less substantial than those found by the court in *Varsic*. But nothing in *Varsic* suggests that the contacts found there represented a necessary minimum that must be met in all cases. Like *Waeltz*, therefore, *Varsic* is of little help to defendants.

Finally, defendants rely on *Seitz v. Board of Trustees of NYS Teamsters Pension*, 953 F. Supp. 100 (S.D.N.Y. 1997). There, the court held that "the fact that there are or were contributing employers and retirees receiving benefits in this district, other than the Plaintiffs, is not sufficient to satisfy the minimum contacts test nor the three prong test set [forth] by the *Varsic* Court." *Id.* at 102. Importantly, however, the test for personal jurisdiction used by the court in *Seitz* was more stringent than that articulated in *Varsic*. In addition to the traditional personal jurisdiction factors noted in *Varsic*, the court noted:

> Furthermore, in New York, courts look to several factors to determine whether they have personal jurisdiction over a corporate defendant,

> including the "maintenance of bank accounts and other property" in New
> York; the presence of employees in New York; the existence of an office
> in New York; and the solicitation of business in New York.

*Id.* (citing *Fischer v. Enterprise Rent-A-Car Co.*, Nos. CV-95-4876, CV-95-4938, 1996

WL 251426 (E.D.N.Y. Apr. 24, 1996)). From the fact that general personal jurisdiction

was found lacking under the test applied in *Seitz*, therefore, it does not follow that the

requirements for general personal jurisdiction are not met here.

The court thus concludes that the criteria for general personal jurisdiction are met

here and that the Plan may be found in this district for purposes of establishing venue

under ERISA.

## 2. Specific Personal Jurisdiction

Even if the defendants' contacts with this district were insufficient to meet the

criteria necessary to establish general personal jurisdiction, venue in this district would

nonetheless remain proper, for the Plan's contacts suffice to meet the requirements for

specific personal jurisdiction. To determine whether the Plan's contacts with this forum

are such as to subject them to the court's exercise of specific jurisdiction, the court must

decide whether the Plan should reasonably anticipate being haled into court in Illinois

because the Plan has purposely availed itself of the privilege of conducting activities

here. *See MAC Funding Corp. v. Northeast Impressions, Inc.*, 215 F. Supp. 2d 978, 980

(N.D. Ill. 2002). In examining whether minimum contacts exist for purposes of specific

jurisdiction, the court looks only to the contacts that are directly related to the suit. *Id.*

Here, plaintiffs claim that their causes of action stem directly from the Plan's contacts

with this district. Specifically, plaintiffs argue that the Plan's contact with this forum

consists chiefly of the fact that the Plan underpaid participants residing in this district.

14

Defendants offer two arguments in support of their contention that the requirements for specific personal jurisdiction are lacking here. In their opening brief, defendants argue that the conduct out of which plaintiffs' claims arise did not occur in this district. This argument essentially repeats the arguments offered by defendants in connection with the question of where the relevant breach or breaches occurred. Again, defendants claim that the only breach at issue is the breach of the duty to provide notice. Defendants further reassert their contention that the breach of the duty to provide notice took place in Texas, since that is where the decisions relating to the notice were made, and not in this district, where the improper notice was received (or where the proper notice was not received). Having already considered and rejected these contentions, the court need not consider them again for the purpose of determining whether the requirements of specific personal jurisdiction are met here.

Defendants' second argument, raised in their reply brief, is as follows: a class representative must independently satisfy venue requirements. As a result, only the named plaintiffs' injuries are relevant to the venue analysis. The fact that absent class members or unnamed Plan participants may have received inadequate notice is therefore irrelevant. Rather, it must be shown that the named plaintiffs received inadequate notice. None of the named plaintiffs resided in this district during the relevant time period. Defendants acknowledge that Koenig worked and earned pension benefits under the Plan while living in Hoffman Estates, Illinois from 2000 to 2001. It was only from 1997 to 2000, however, that the amendments were made and the allegedly inadequate notice was given. Because none of the named plaintiffs was harmed by the defendants' contacts

15

with this district, the requirements for specific personal jurisdiction are not met, and venue in this forum is improper.

This argument is similarly flawed. Again, this argument at most could show only that none of the named plaintiffs was harmed by the *failure to provide notice*. As already noted, however, in addition to claiming that they were not provided with proper notice, plaintiffs also claim that their benefits were systematically underpaid. The period of underpayment, unlike the period during which the inadequate notice was provided, is not limited to the years 1997 to 2000. In 2001, Koenig resided in this district and allegedly received an underpayment with respect to his benefits.[6] In addition, defendants' argument regarding specific personal jurisdiction fails because, having been raised only in defendants' reply brief, it afforded plaintiffs no opportunity to respond. Consequently, the argument is waived.

In sum, the court concludes that the criteria for specific personal jurisdiction are met here, thus providing an additional ground on which the defendants "may be found" in this district for purposes of establishing venue under ERISA.[7]

---

[6] Two further points bear mentioning here. First, as pointed out *supra* at note 4, it is unclear as a factual matter whether Koenig resided in this district during the period of the allegedly defective notice. To the extent that defendants' argument here presupposes that Koenig was not harmed by the defendants' notice-related activities, it is subject to an additional vulnerability. Second, it is important to note that venue need not be independently established with respect to each of plaintiffs' claims. *See, e.g., Lachmund v. ADM Investor Servs., Inc.,* No. 96 C 4143, 1997 WL 43214, at *3 n.1 (N.D. Ill. Jan. 28, 1997) (holding that because venue was proper as to plaintiff's RICO and Commodity Exchange Act claims, venue was also proper as to the remainder of plaintiff's claims); *see also Kramer v. Pittstown Point Landings, Ltd.,* 637 F. Supp. 201, 205 (N.D. Ill. 1986) ("Although the general rule is that venue must be established as to each separate claim, if the claims amount to one cause of action with separate grounds for relief, proper venue as to the principal claim will support adjudication on all claims."). Hence, assuming *arguendo* that Koenig was affected only by the defendants' underpayment of his benefits, and that venue could not be established with respect to plaintiffs' defective notice claim, it would not follow that venue was improper in this district with respect to the case as a whole.

[7] Having concluded that venue is proper in this district by virtue of the fact that the breach occurred here and because at least one of the defendants "may be found" here, the court need not consider whether venue is also proper by virtue of the fact that one of the defendants "resides" in this district.

16

## II.    Motion to Transfer[8]

### A.    Legal Standard

As an alternative to dismissal pursuant to Rule 12(b)(3), defendants ask the court

to transfer the case to the Western District of Texas pursuant to 28 U.S.C. § 1404(a).

Under section 1404(a), a court may transfer a case to another district if the moving party

demonstrates that: (1) venue was proper in the transferor district; (2) venue and

jurisdiction would be proper in the transferee district; and (3) the transfer will serve the

convenience of the parties and the witnesses as well as the interests of justice. *See* U.S.C.

§ 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might

---

[8] Even if the court were to grant defendants' motion to dismiss for improper venue, it would still be appropriate for the court to consider transfer of the action. *See, e.g., Protess v. Howell*, 95 C 2553, 1995 WL 270219, at *4 (N.D. Ill. May 5, 1995) (granting motion to dismiss for improper venue but transferring the action to another district under 28 U.S.C. §1406(a)); *United Liberty Life Ins. Co. v. Pinnacle W. Capital Corp.*, 149 F.R.D. 558, 562 (S.D. Ohio 1993) ("Whether a case that has been brought in a district where venue is improper should be dismissed or transferred is within the discretion of the district court. However, doubts are usually resolved in favor of transferring the action since the interest of justice is generally better served by transfer than by dismissal.") (internal citations omitted); *Van Gelder v. Taylor*, 621 F. Supp. 613, at 621-22 (N.D. Ill. 1985) ("Normally, if venue is not proper in the district court where the action is initiated, transfer to a proper district or division is preferred over dismissal. Transfer is generally considered to be more 'in the interest of justice' than dismissal for improper venue and, therefore, any doubts should be resolved in favor of preserving the action, particularly where it appears that venue is proper in the transferee court.") (internal citations omitted). Indeed, some courts faced with a motion to dismiss for improper venue or to transfer have elected to grant the transfer without first determining whether venue in the original forum was proper. *See, e.g., Tong v. Direct Trading Corp.*, No. 02 C 8331, 2003 WL 22282466, at *2 (N.D. Ill. Oct. 1, 2003) ("Regardless of whether venue, and necessarily this court's personal jurisdiction over all Defendants, is proper in the Northern District of Illinois, the following analysis of the factors to consider in deciding a motion to transfer indicate that this claim would be best brought in the Northern District of Texas."); *Multistate Legal Studies, Inc. v. Marino*, No. CV 96-5118 ABC (RNBx), 1996 WL 786124, at *10 (C.D. Cal. Nov. 4, 1996) ("Upon thoughtful consideration of U.S.C. § 1404(a) and related case law, the Court finds that U.S.C. § 1404(a) may be utilized in this case, even though the Court has not made the threshold determination as to whether venue is proper in the Central District of California as to [two of the parties].").

have been brought."); *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at \*1-2 (N.D. Ill. July 21, 2004) (citing *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995)).

The court has already concluded that venue is proper in this district; moreover, neither party disputes that venue would be proper in the Western District of Texas. Hence, for the purpose of defendants' motion to transfer, the court need only consider whether transfer will serve the convenience of the parties and witnesses and the interests of justice. In making the latter determination, the court must take account of both the private and public interests at stake. *Id.* at \*2 (citing *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998)). The private interest factors include: (1) plaintiffs' choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience to the witnesses and parties. *Id.* The public interest factors include: (1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for an earlier trial. *Collier v. Murphy*, No. 02 C 2121, 2002 WL 31761406, at \*4 (N.D. Ill. Dec. 9, 2002). "Because determining whether to transfer venue 'involves a large degree of subtlety and latitude,' and is made on a case-by-case basis, it is 'committed to the sound discretion of the trial judge.'" *Cooper Bauck Corp. v. Dolby Labs., Inc.*, No. 05 C 7063, 2006 WL 1735282, at \*1 (N.D. Ill. June 19, 2006) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). With these standards in mind, the court turns to a consideration of the relevant factors.

**B.     Private Interest Factors**

**1.     Plaintiffs' choice of forum**

As a general matter, a plaintiff's choice of forum is usually accorded deference and weighs significantly against transfer. *See Doe v. Bd. Trs. Univ. Illinois*, No. 05 C 5189, 2006 WL 2792694, at *1 (N.D. Ill. Sept. 25, 2006). In addition, some courts have observed that plaintiffs' choice of forum is entitled to deference in ERISA cases. *See Cent. States, Southeast and Southwest Areas Pension Fund v. White*, No. 99 C 1046, 1999 WL 447059, at *1 (N.D. Ill. June 25, 1999). On the other hand, the weight given to this factor can vary significantly depending on the circumstances of each particular case. *Bowe Bell + Howell Co. v. Immco Employees' Ass'n*, No. 03 C 8010, 2004 WL 1244143, at *5 (N.D. Ill. June 2, 2004). Here, the importance of plaintiffs' choice of forum is diluted in at least two key respects. First, plaintiffs' choice of forum is entitled to less weight in the class action context. *See, e.g., Finley v. Dun & Bradstreet Corp.*, No. 05 C 5134, 2006 WL 861920, at *2 (N.D. Ill. Mar. 30, 2006) ("[T]he deference shown a plaintiff's choice of forum is diminished where, as here, Plaintiff is a representative of a class. Plaintiff's choice thus becomes simply one factor among many to be considered.") (internal citations and quotations omitted). Second, plaintiffs' choice of forum is less important where, as here, none of the named plaintiffs resided in the forum at the time the action was filed or when the motion was being briefed.[9] *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999) ("[W]here the plaintiff's chosen forum is not the plaintiff's home forum or lacks significant contact with the litigation, the plaintiff's chosen forum is

---

[9] As noted above, Koenig lived in this district in 2001, but did not reside in the district when either the original complaint or the first amended complaint was filed. The court assumes that Koenig presently resides in this district. The affidavit he submitted in conjunction with plaintiffs' response brief left unclear precisely when Koenig would return. Plaintiffs cite no authority for the proposition that plaintiffs' choice of forum is entitled to deference under these circumstances.

entitled to less deference."). In light of these considerations, plaintiffs' choice of forum carries little, if any, significance in this case and is essentially a neutral factor in determining whether the litigation should be transferred.

### 2. The situs of the material events

This factor largely recapitulates the considerations discussed earlier in connection with the place of the alleged breach. Although breaches took place in this district, the vast majority of material events took place in the Western District of Texas: the Plan is administered there; the pivotal decisions regarding notice and payment of benefits were made there; the decisions to amend the Plan were made from there; the notices in question were drafted and sent from there; and the payment of benefits issued from there. Defendants are correct in asserting that the only connection this forum has to the litigation is the fact that certain of the Plan participants currently reside (or have resided) here. While the latter consideration is enough to make venue proper in this district, it does not make this a convenient (or the most convenient) forum. The court concludes that this factor weighs significantly in favor of transfer.

### 3. Relative ease of access to sources of proof

Defendants argue that virtually all of the sources of proof are likely to exist in Texas. In light of the fact that most of the events material to the litigation took place in Texas, the court agrees. Indeed, plaintiffs make no effort to contest this point. As a result, this factor weighs significantly in favor of transfer.

### 4. Convenience to the witnesses and parties

With respect to the convenience of the parties, the balance tips slightly in favor of transfer. Both of the defendants are located in the Western District of Texas. While none

of the plaintiffs currently lives in the Western District, Calder lives in Texas and thus is obviously closer to the transferee forum than he is to this district. Koenig at this point presumably resides in this district; however, he is the only party who resides here. Plaintiff Vaugh-Smith lives in Missouri; litigating the case in Illinois may be more convenient for her, but only marginally so. In purely numerical terms, therefore, more parties reside in, or are closer to, the Western District than they are to this district.

Plaintiffs claim that litigating the case in Texas will be inconvenient for them because their attorneys do not have offices there. By contrast, plaintiffs argue, litigating in this district will not be inconvenient for defense counsel because counsel for the defendants have litigated several other cases in this district. The court disagrees. From the fact that the attorneys for the defendants have litigated here before, it does not follow that it would not be inconvenient for them to do so. Considerations relating to the convenience of the parties' attorneys, therefore, are essentially neutral.

Finally, no witness has been identified who resides in this district. On the other hand, both parties have identified a number of witnesses in the Western District of Texas. Several of these are former employees of defendants and will not be subject to compulsory process if the case is venued in this district. Defs.' Reply Pls.' Opp. Mot. Dismiss or Transfer 15 n.8. Hence, the convenience of the witnesses points decisively in favor of transfer.

In sum, with the exception of the plaintiffs' choice of forum—which is neutral — all of the private interest factors favor transfer.

21

### C.     Public Interest Factors

As noted, the public interest factors to be considered in evaluating a motion to transfer are: (1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) congestion of the respective court dockets and the prospects for an earlier trial.     Plaintiffs do not discuss these factors individually. Rather, they essentially argue that there is a public interest in having the dispute heard in this district because many class members reside here.

For their part, defendants effectively concede that the last two factors are neutral. Defendants do not argue that courts in one district are likely to have a greater familiarity with the applicable law than courts in the other. Defendants also acknowledge that both districts experience the same degree of docket congestion. However, defendants urge that the Western District of Texas has a greater interest in the dispute than does this district.     Specifically, defendants note that both defendants are based in the Western District of Texas; the plaintiffs' claims arise out of actions taken in the Western District of Texas; the Plan is administered in that district, and many plan participants reside in that district. The court agrees that the Western District of Texas has a greater interest in this dispute and that, consequently, the public interest factors tilt in favor of transfer.

In short, transfer of this case to the Western District of Texas is proper in light of both the private and public interest factors.     The court therefore concludes that the Western District of Texas is clearly a more convenient forum that this district and accordingly grants defendants' motion to transfer.[10]

---

[10] Plaintiffs ask that if the court is inclined to transfer, the case should be transferred to the District Court for the District of Columbia, where a related class action litigation, *Wagener v. SBC Pension Benefit Plan –*

22

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for improper venue is denied and the motion to transfer to the Western District of Texas is granted.

ENTER:

_____/s/_____

Joan B. Gottschall
United States District Judge

Dated: March 26, 2007

---

*Nonbargained Program*, 03-769 (RCL) (D.D.C. filed Mar. 27, 2003), has been underway since 2003. In *Wagener*, a subset of the proposed class in this case (namely, a group of employees who opted for early retirement) has brought a claim for miscalculation of benefits resulting from the base pay amendments at issue in this case. Unlike this case, however, *Wagener* does not involve a challenge to the validity of the amendments themselves (although *Wagener* initially involved such a challenge). Further, unlike this case, *Wagener* does not involve a claim for defective notice under ERISA § 204(h).

According to plaintiffs, venue is proper in the District of Columbia because the defendants have not objected to venue in that forum. Even if this were true, however, transfer to the District of Columbia would be inappropriate. For the reasons already adduced in considering defendants' motion to transfer, the Western District of Texas represents the optimal forum for resolution of this case. The District of Columbia, on the other hand, has no connection to the instant suit other than the *Wagener* litigation. That connection provides no basis for transfer to the District of Columbia. Plaintiffs suggest that since *Wagener* is still in discovery, "coordination, if not consolidation, [is] still possible." Pls.' Mem. Opp. 29. Elsewhere, however, plaintiffs concede that any attempt to coordinate this case with *Wagener* would delay *Wagener*'s resolution on the merits—a result that the plaintiffs very much wish to avoid. *Id.* at 3 n.5. Plaintiffs cite authority, including this court's decision in *Spherion Corp. v. Cincinnati Financial Corp.*, 183 F. Supp. 2d 1052, 1059 (N.D. Ill. 2002), for the proposition that related litigation should be transferred to a forum where consolidation is possible. Here, however, plaintiffs themselves seem skeptical about the possibility of consolidation and indeed appear to believe that even the prospects for coordination are not great. The court therefore declines plaintiffs' invitation to transfer this case to the District of Columbia.